UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                           Hon. Ellen S. Carmody

v.                                                     Case No. 1:04-mj-00711

JOEL TIMOTHY ZOPHY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Defendant Joel T. Zophy has been charged in a one count criminal complaint with mailing a threatening communication to employees of the United States government in violation of 18 U.S.C. § 876(c). Defendant Zophy was ordered by the Court, pursuant to 18 U.S.C. § 4241, for a competency evaluation, which occurred at the Metropolitan Correctional Center in New York, New York. The evaluators, Dr. Cristina Liberati, Ph.D. and Ivonne E. Bazerman, Psy.D., found that Defendant was not currently competent to stand trial by reason of a mental disease, specifically schizophrenia, paranoid type. Following a hearing, Defendant was committed to the U.S. Medical Center for Federal Prisoners ("U.S.M.C.F.P."), for a period not to exceed 120 days, for restoration of competency pursuant to 18 U.S.C. § 4241(d).

Dennis Bitz, attorney for U.S.M.C.F.P., communicated with the Court, advising that it was unlikely that Defendant could be restored to competency without the use of antipsychotic medication which Defendant declined to take. The government subsequently brought a Motion for an Order of

Involuntary Medication (Dkt. 24). A hearing was held on this motion on April 15, 2005, and continued to April 22, 2005.

For purposes of this motion only, the Assistant United States Attorney and defense counsel stipulated that the crime with which Defendant was charged, whoever committed it, resulted in the closing of a federal office building for several days. In addition, fifteen federal employees and nine private citizens were forced to remain quarantined on the premises until they could be processed through decontamination stations, and several employees were required to go to the hospital for observation following the decontamination. That sequestration, setting up of decontamination stations, processing of victims through the stations, and removal of the related equipment required a significant expenditure of local government "first responder" personnel, assets and funds. It was also emotionally upsetting to several of the persons required to go through the process as well as to their family members who became aware of the situation as it unfolded. All of these effects were caused by the perpetrator sending a quantity of what turned out to be baking soda in a piece of mail. The written communication accompanying the baking soda was bizarre, containing the names of current and former federal officials written in apparent crossword puzzle format along with the words, "Mole Department, J. Edgar Hoover F.B.I. Building."

At the hearing on the Motion for Involuntary Medication, testimony was taken from Dr. Christina Pietz and Dr. Robert Sarazin on April 15 and 22, 2005. These witnesses both appeared by video conference, as did Mr. Zophy. Mr. Zophy's attorney, Craig Frederick, was present in court in Grand Rapids and had the opportunity to confer privately with Defendant prior to the hearing. Mr. Frederick, on behalf of Defendant, opposed the government's motion.

Dr. Pietz, the primary clinician who has worked with Defendant at U.S.M.C.F.P., has known Defendant since 1993, having worked with him before during an earlier federal criminal charge which was ultimately dismissed (Case No. 1:93-cr-143) because, despite having been tried on three different medications, the Medical Center was unable to restore Mr. Zophy to competency.  Dr. Pietz stated that she had reviewed all of the records from 1993 and 1994, when she had spent approximately ten to fifteen hours evaluating Defendant with psychological testing.  She also had three to four hours of informal contact during Defendant's 1993 commitment.  Dr. Pietz testified that she had spent approximately one hour with Defendant on his current admission.  She further noted that Defendant had attended a competency restoration group on one occasion.  In the group, he was pleasant, cooperative, and intelligent but expressed delusional thoughts.  Dr. Pietz opined that Defendant Zophy is not a danger to himself or to other inmates.

Dr. Pietz referred Defendant to Dr. Sarazin, who also opined that Defendant was not a danger to himself or to others.  Both treaters stated that administration of antipsychotic drugs was medically appropriate and that they recommended trying Defendant on atypical antipsychotic medication.  Atypical antipsychotics are second generation antipsychotic medications which allegedly cause fewer side effects.  They are all FDA approved and not considered experimental.  According to doctors, side effects are generally mild and not long lasting, typically lasting three to four days and consisting of constipation, diarrhea and sedation.

Dr. Serazin acknowledged that there is an element of trial and error in the administration of antipsychotic medications, and that in unusual cases they can cause more serious side effects.  However, he expressed confidence that, given Defendant's residential treatment status, he could be closely monitored for side effects.  Dr. Serazin also cited a study, albeit with a relatively small

sample, in which 75 to 77% of defendants who were involuntarily medicated were restored to competence. Neither Dr. Pietz nor Dr. Sarazin believed that it was likely that Mr. Zophy could be returned to competence absent the administration of antipsychotic medication.

## LEGAL STANDARD

The United States Supreme Court recently addressed a situation where a defendant was not a danger to himself or others but allegedly required involuntary medication to be restored to competency. *Sell v. United States*, 539 U.S. 166 (2003), set out the following standard. First, the court must find that important governmental interests are at stake. Second, the court must conclude that the involuntary medication will significantly further those state interests. Third, the court must conclude that involuntary medication is necessary to further those interests, i.e., alternative, less intrusive treatments are unlikely to achieve substantially the same results. Fourth, the administration of the medication must be medically appropriate. Finally, the court must consider whether the side effects of the antipsychotic medication would be likely to undermine the fairness of a trial.

The *Sell* court did not address the standard of proof that the government must meet in evaluating these different factors. However, the Second Circuit in *United States v. Gomes*, 387 F.3d 157, 160 (2d Cir. 2004), stated that the showing of necessity had to be made by clear and convincing evidence. *See also, United States v. Brandon*, 158 F.3d 947 (6th Cir. 1998). The government has conceded that this is the appropriate standard of proof in this matter.

## LEGAL ANALYSIS

    A.    <u>Important governmental interests are at stake.</u>

It is certainly an important governmental interest that its employees be free to work without the fear and anxiety caused by an incident such as that alleged in the complaint. Employees of the United States government are sensitized to the lethal nature of anthrax by the spate of terrorist acts following the September 11, 2001, attacks. While the substance allegedly mailed by Defendant to the Social Security office was not ultimately dangerous, one can only imagine the fear and distress experienced by those who believed they might have been contaminated, as well as their loved ones. The importance of the government interest is also illustrated by the fact that the charge against Defendant is a felony, with a penalty of up to ten years in prison. 18 U.S.C. § 115(b)(4).

    B.    <u>Involuntary medication is necessary to and will significantly further the government's interests.</u>

Charges against Defendant cannot proceed to trial while he is incompetent. Moreover, two evaluating professionals have concluded that he is likely to be restored to competence only by antipsychotic medication. Similarly, charges against Defendant in 1993 could not proceed to trial because, even with the trial of three different antipsychotic medications, there was no significant change to his condition.

Although Dr. Serazin cited a study in which 75-77% of defendants involuntarily medicated were restored to competence, he had no opinion regarding the success rate in restoration to competence for individuals previously given involuntary medication without change in their condition. He did, however, opine that administration of atypical anti-psychotics might be successful where first generation antipsychotics were not.

The Court also considered the use of a court order backed by the contempt power. However, since Mr. Zophy is indigent and involuntarily incarcerated, the contempt power seems without teeth. Furthermore, the Court finds that there exists no alternative, less intrusive method which is likely to restore Defendant to competency.

After having federal charges against him dismissed in 1994 because he was not competent, Mr. Zophy is again charged with engaging in threatening behavior. Thus, the Court concludes that the government has proven that the involuntary medication of Defendant is necessary to and will significantly further its interests in this matter.

        C.        <u>The side effects of antipsychotic medication.</u>

The Court concludes that the government has also established that the potential side effects of the antipsychotic medication which Dr. Sarazin proposes administering to Defendant would not undermine the fairness of a trial, because side effects for the atypical antipsychotic medication are less frequent, less serious, and typically transitory, according to Dr. Serazin. He also was confident that Mr. Zophy could be carefully monitored for side effects given his custodial status. The Court found this aspect of the government's motion a close call. Mr. Zophy has already been unsuccessfully treated on three different antipsychotic medications in 1994. However, the Court was persuaded by the fact that Dr. Serazin testified that he would administer a different generation of antipsychotic drugs.

        D.        <u>The administration of the drugs must be medically appropriate.</u>

Both Dr. Serazin and Dr. Pietz opined that the administration of antipsychotic drugs was appropriate medical treatment for Mr. Zophy's condition. Despite signs that Mr. Zophy is cooperative and intelligent, the Court has had the first hand opportunity to observe the element of

delusional thinking which renders him incompetent to stand trial. Given the seriousness of the charges faced by Defendant and the apparent possible connection of those charges with his delusional system of thinking, it seems clear to the Court that this aspect of the analysis has been satisfied.

## CONCLUSION

As discussed above, the Court finds that the government has satisfied the requirements of *Sell* by clear and convincing evidence. On balance, the undersigned recommends that the Court enter an order granting the government's motion for involuntary medication of Defendant, and further recommends that such be contingent upon implementation of a plan to assure that Mr. Zophy can be administered the medication(s) and monitored for side effects after his release from U.S.M.C.F.P. until his trial in this matter is completed.

Respectfully submitted,

Date:  May 6, 2005 　　　　　　　　　　　　　 /s/ Ellen S. Carmody
　　　　　　　　　　　　　　　　　　　　　　　ELLEN S. CARMODY
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).